## Central Accident Insurance Company v. Alvin Rembe, et al.

1. INSURANCE POLICY—*when coming in contact with poisonous substance will not defeat recovery upon.*    The fact that a physician after receiving an injury comes in contact with a poisonous substance, will not defeat recovery notwithstanding the policy excludes injuries or death resulting from coming in contact with such substances.

Action of assumpsit.   Appeal from the Circuit Court of Logan County; the Hon. GEORGE W. PATTON, Judge, presiding.    Heard in this court at the May term, 1905.    Affirmed.    Opinion filed October 9, 1905.

KING & MILLER, for appellant.

BLINN & COVEY, for appellees.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in assumpsit, instituted by appellees against appellant, by which it is sought to recover the amount alleged to be due to appellees as beneficiaries under a policy of insurance issued by appellant to Edward Rembe in his lifetime. The plaintiff recovered a judgment in the Circuit Court for the sum of $5,000, to reverse which an appeal was prayed by the defendant.

The following facts are not controverted, viz.: The insured, Edward Rembe, who was a practicing physician and surgeon, in May, 1903, through an agent of appellant, made application for a policy in the defendant company, upon which a policy was issued, containing, *inter alia*, the following provision, viz.: "This policy does not cover * * * death * * * resulting wholly or partly from any of the following causes, * * * voluntary or involuntary taking of poison or contact with poisonous substances." Dr. Rembe declined to accept the policy upon the ground that it did not cover blood poison or septicemia. The agent thereupon returned the policy to the office of the company, where a slip was attached containing the following additional provision: "Policy No. 75719 is hereby extended to cover that class of injuries known as septic wounds, caused by accident while performing any operation pertaining to the business of the insured, the poison matter being injected into the wound at the time of the accident and resulting in disability or death under the conditions of the policy." The policy, with the slip attached, was then returned to Dr. Rembe and accepted by him.

The evidence further shows that on November 25, 1903, at his office in the city of Lincoln, the insured, in the pursuit of his profession, was called upon to administer treatment to a patient who was suffering with syphilis of a virulent form, and of several weeks' duration; that after he had finished such treatment, and while in the act of preparing some medicine to be taken away by the patient, he attempted to remove the cork from a glass bottle, and that

in so doing the neck of the bottle broke, and slightly wounded one of his fingers; that he immediately wrapped the wound, completed the preparation of the medicine and then again bound up the wound, using gauze cloth and rubber tissue. That upon the same day and the day following, he visited and treated a child named Koehnle, who was afflicted with an abscess of the ear, which was at the time discharging pus. On the afternoon of the second day the wound had become much swollen and very painful. Physicians were thereupon called, who treated the insured until December 14, 1903, when his death ensued, as the result of the intervening septicemia.

The declaration consists of two counts, the first of which declares upon the policy generally, and the second upon the attached slip specifically. At the close of plaintiff's evidence, and again at the close of all the evidence, the defendant moved the court to direct a verdict in its favor. The action of the trial court in overruling said motions is assigned as error.

It is contended by appellant that there can be no recovery under the original terms of the policy, for the reason that the evidence shows that the germs which caused septicemia were injected into the wounded finger while treating the Koehnle child several hours after the accident; that the death of the insured therefrom resulted primarily from his body coming in contact with poisonous substance within the meaning of the terms of the exception in the original policy. Whether the inoculation of virus occurred at the time of the accident, as contended by appellees, or during the treatment of the Koehnle child, as contended by appellant, was a question for the jury. While the evidence relating thereto is somewhat conflicting, we are inclined to think the contention of appellees the more reasonable and probable, in view of the testimony of Mrs. Koehnle, the mother of the child, who stated positively that at the time the insured treated her child, his finger was wrapped up, and that his hand at no time came in contact with the body of the child. Be that as it may, if the prime cause of the death

can be said to have been septicemia, and not the wound itself, there would be some force in appellant's contention that there can be no recovery under the first count of the declaration. It is manifest, however, that the insured would not have contracted septicemia had he not received the wound. Otherwise the poisonous germs with which he came in contact would have been harmless. We are of opinion that the jury was warranted in finding that although the septicemia contributed to the death, it related back to the wound, and that such wound was, in consequence, the proximate cause of the death of the insured. Such conclusion is, we think, supported by the following authorities:

In Martin v. Manufacturers' Accident Indemnity Co., 45 N. E. 379 (N.Y.), the insured, in opening or closing an umbrella, pinched a small piece of skin from one of his fingers. Blood poisoning intervened, causing his death. The policy in suit covered death ensuing only from injuries effected through "external, violent and accidental means." It was contended by the defendant that the death was caused not by the wound but by blood poisoning, and that, therefore, the injury alone did not cause the death; that it was not the prime cause thereof. In its opinion the court says:

" The policy provides that insurance shall not extend to 'any case except where the injury is the proximate and sole cause of the disability or death.' Upon the fact as found, the inoculation of the wound at the very time of its infliction was a part of the injury and the immediate cause of the death; without the wound there would have been no inoculation, and so also without the inoculation the wound would not probably have been fatal. But it is impossible to separate the two in the practical construction of this condition in question. Both were contributing and co-existing causes of death, set in motion and operating together from the same moment of time."

In Commercial Travelers v. Smith, 40 L. R. A. 653 (U. S. C. C. A.), the accidental abrasion of the skin of one of the toes of the insured resulted in blood poisoning and death. It is there said :

"It is earnestly contended, however, that the death was not caused by bodily injuries effected by external, violent and accidental means, because the disease of blood poisoning was the cause and the abrasion of the skin of the toe was only the occasion, the locality in which the disease first appeared. * * * If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such case the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the cause *causant* to the accident alone."

In Omberg v. Mutual Accident Association, 40 S. W. 909 (Ky.), which was an action to recover under an accident policy for death resulting from blood poisoning following the bite of an insect, it was held that the death was caused through "extraordinary, violent and accidental means," within the terms of the policy, and that it was not within an exception excluding liability for the result of "poisoning in any form or manner or contact with poisonous substances." The court held that but for the bite the blood poisoning and death would not have resulted; that blood poisoning was consequent on the wound, and the bite was therefore the proximate cause of death.

In Freeman v. Accident Association, 17 L. R. A. 753 (Mass.), the policy limited the insurer's liability to causes where an injury was the proximate cause of death. The insured had an accidental fall, causing peritonitis. The court in its opinion says:

"The principal question in the case is, what kind of a cause is to be deemed 'proximate' within the meaning of the policy. Where different forces and conditions concur in producing a result, it is often difficult to determine

which is properly to be considered the cause, and in dealing with such cases the maxim *causa proxima non remota spectatur* is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate cause. It means that the law will not go further back in the line of causation than to find the active, efficient, procuring cause of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient, predominant cause which following it no further than those consequences that might have been anticipated as not unlikely to result from it, had produced the effect. To adopt the view contended for by the defendant would make the policy worthless to beneficiaries in many cases of death where an injury resulting from an accident was the efficient cause."

In Delaney v. Accident Club, 63 L. R. A. 605 (Iowa), the court in discussing this question says:

"The simple question is, whether the death of Delaney resulted, through natural causes, without the interposition of a new and independent cause, from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous."

Applying the foregoing views to the uncontroverted facts in evidence, it follows that it was the duty of the jury to return a verdict for the plaintiffs under the first count of the declaration. All other questions argued arise under the count predicated upon the clause contained in the additional slip, and are, therefore, unimportant in this case, and need not be considered or determined.

The judgment of the Circuit Court is accordingly affirmed.

*Affirmed.*